IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STEPHEN ANDERSON,              )
                               )
        Plaintiff,             )
v.                             )        Case No. 2:03-cv-2684-TMP
                               )
AAA COOPER TRANSPORTATION,     )
                               )
        Defendant.             )

**MEMORANDUM OPINION**

This cause is before the court on the motion for summary judgment filed on October 22, 2004, by the defendant AAA Cooper Transportation ( "AAA Cooper"). Essentially, defendant seeks dismissal of plaintiff's sole claim of retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. This matter has been fully briefed, and the court has considered the evidence and the arguments set forth by all parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).

**I. SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56 (c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment

"always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celeotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in the form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). The substantive law will identify

which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  His guide is the same standard necessary to direct a verdict: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  FACTS FOR SUMMARY JUDGMENT PURPOSES

Applying the standards repeated above, the following facts are either undisputed by the parties, or are taken most favorably for the non-moving plaintiff.

AAA Cooper, a freight company, hired Anderson in 1997 as a part-time dock worker, at which time his primary duties were loading and unloading trucks.  In January 1998, AAA Cooper laid off Anderson, but subsequently rehired him a few months later, on July 20, 1998, to the same position.  In June of 1999, Anderson was transferred from the loading dock to a truck-driving position, which still required, however, several hours a day of dock work.  The following November 1999, his position was changed to linehaul driver.

On April 3, 2000, Anderson was involved in an automobile accident that caused injuries to his knees, which left him temporarily disabled, and he was absent from work from April 2000 until July 2000.  He returned to "light duty work" on July 17, 2000.

In August 2000, plaintiff was told by Jimmy Kirk and Dan Langley that "he would never be able to do the work at AAA Cooper again."  At the time, his knees were "bad ... swollen, still black, and had scars all down them."  Anderson admits that, at that time, he was able to get around only with the help of a walker, and that his knees were "real big" and "still in braces."  Anderson concedes that Kirk and Langley were merely stating what appeared to be obvious at the time.

Anderson continued to do "light duty work" at AAA Cooper, which required driving but no dock work, from July 17, 2000, until he was released by his doctor to full duty with no restrictions in January 2001.  At that time, Anderson was transferred back to the dock, where he worked without apparent difficulty.  A year later, in early 2002, Anderson again was given work as a linehaul driver.

Between his return to "full duty" work in January 2001 and his layoff in February 2002, Anderson was absent, using either sick time or personal days, on 23 occasions. He does not remember the reasons he took the sick days, but says the personal days usually were related to his divorce and court dates.

On February 15, 2002, AAA Cooper laid off 21 employees, including Anderson. Under company policy, Anderson's layoff automatically became a termination on April 15, 2002, when he was not rehired within eight weeks of the initial layoff. During the eight-week period, none of the 21 employees who were laid off was rehired. On several occasions during the eight-week period, Anderson called Paula Crooks, Personnel Manager at AAA Cooper, and asked her if the company was rehiring. She told him the company was not. Between April 15, 2002, and the filing of his EEOC charge on November 1, 2002, Anderson called Crooks on "several" other occasions to ask about rehire. She told him they were not rehiring "at that point." She did not tell anyone else at AAA Cooper that Anderson had called.

Just after the eight-week period expired on April 15, 2002, AAA Cooper rehired 10 of the 21 laid-off workers. Two more were rehired on April 22, 2002, one more in May 2002, and two more in June 2002. Decisions about which employees should be rehired were made by Jason Barkely, the terminal manager, but he based his decisions solely on the recommendations of shift supervisors, who recommended which of the laid-off employees they wanted to have back on the shifts they supervised. Jimmy Kirk was the shift supervisor who could have recommended Anderson for rehire, but he did not. Instead, he showed Barkley Anderson's attendance records and told him

5

that Anderson had a lot of absences and could not be counted on to show up for work on Mondays and Fridays.

On November 1, 2002, Anderson filed a charge with the EEOC alleging discrimination related to the February 2002 layoff and his disability. Also in November 2002, Anderson's attorney sent a letter to AAA Cooper requesting that Anderson be rehired. Barkley was aware of the attorney's letter. In response to the EEOC's inquiries during the investigation of plaintiff's charge, the defendant stated that Anderson was not rehired because the company was unaware that he wanted to be considered for rehire. On June 16, 2003, more than seven months after the EEOC charge was filed, Kenneth Durrett, one of the employees laid off as part of the 21-employee layoff, was rehired as a part-time worker.[1] The EEOC dismissed Anderson's charge of discrimination on July 11, 2003, and sent him a right to sue letter. Anderson filed the current action against his former employer on September 30, 2003, alleging that AAA Cooper retaliated against him by failing to recall or rehire him because he filed an EEOC charge.[2]

---

[1]   In his briefs and pleadings, Anderson highlights the fact that of the 21 employees who had been laid off on February 15, 2002, 12 were rehired in April 2002, one in May 2002, and two in June 2002. However, since it is clear from Anderson's complaint that the only claim made is a claim of retaliation for filing a charge of discrimination with the EEOC, the court finds that only the rehire of Kenneth Durrett, which occurred on June 16, 2003, is relevant to the claim of retaliation because it was the only such employment action taken by AAA Cooper *after* Anderson filed his discrimination charge with the EEOC. It cannot be sensibly contended that any of the rehires that occurred *before* plaintiff filed his charge of discrimination was in any way in retaliation for it; AAA Cooper could not have retaliated against Anderson for something he had not yet done.

[2]   As mentioned in the preceding footnote, a very careful reading of the complaint makes clear that the only claim asserted is for retaliation arising from the filing of the EEOC charge. The complaint does not allege any claim of discrimination with respect to the 2002 layoff, or any of the rehires that occurred *before* the charge was filed. For example, at ¶ 7, under the heading "Causes of Action," he alleges, "The plaintiff has been discriminated/retaliated against because his [sic] filing an EEOC EEOC [sic] charge against the defendant regarding his alleged disability and

# III. DISCUSSION

Anderson bases his retaliation claim on an alleged connection between his filing of an EEOC charge of discrimination against AAA Cooper on November 1, 2002, and the subsequent rehiring by AAA Cooper in June 2003 of an employee who had been laid off on the same date as Anderson. AAA Cooper seeks summary judgment in its favor on the retaliation claim, asserting that Anderson has not and cannot establish a *prima facie* case of retaliation.[3]  In order to survive a properly supported motion for summary judgment, the plaintiff in a Title VII retaliation case must establish a *prima facie* case by showing: (1) that he engaged in protected conduct and (2) suffered an adverse employment action that was (3) causally linked to the protected expression. Taylor v. Runyon, 175 F.3d 861, 868 (11th Cir. 1999).  In addition, the plaintiff must show that his employer was aware of his participation in the protected activity when it took the adverse action. Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999).  In this case, there is no dispute that AAA Cooper was aware of Anderson's protected activity at the time it failed to rehire him.

## A.  Protected Conduct

Anderson claims that he engaged in a protected activity by filing the EEOC charge against AAA Cooper on November 1, 2002.  The filing of an EEOC charge is a classic "protected activity,"

---

layoff/termination."  Likewise, at ¶ 10 of the complaint, he expressly states, "The defendant's actions are retaliatory due to the plaintiff's November 1, 2002, EEOC charge."  Further, at ¶ 11, the complaint asserts, "The defendant has a pattern and practice of retaliating against employees once they bring complaints of discrimination against the company."

[3]     In addition to addressing the retaliation claim, AAA Cooper also addressed the claim of discrimination that gave rise to the EEOC charge of discrimination.  However, as previously noted, the only claim asserted by Anderson in this action is retaliation for filing an EEOC charge of discrimination, and, thus, since the merits of the discrimination charge are not at issue before this court, the court will limit its discussion to the claim of retaliation.

and meets the first requirement for establishing a *prima facie* case. See Taylor 175 F.3d at 869-870. In addition, AAA Cooper does not challenge Anderson's assertion that he engaged in a protected activity when he filed the EEOC charge.

### B.  Adverse Employment Action

There is no dispute that Anderson has demonstrated that his employment with AAA Cooper was terminated and that he has not been rehired, despite making AAA Cooper aware of his desire to be rehired, and despite the fact that another employee terminated at the same time as Anderson was rehired by AAA Cooper.  AAA Cooper does not dispute Anderson's assertion that the failure to rehire him at the time Durrett was rehired in June 2003 constituted an adverse employment action. Consequently, Anderson has shown that he suffered an adverse employment action sufficient to meet the second element of his *prima facie* case. See Sullivan v. National R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999).

### C.  Causal Link

The plaintiff in a retaliation case under Title VII must show that there is some causal relation between the protected activity and the adverse employment action.  Sullivan, 170 F. 3d at 1059.  The causal link requirement is to be construed broadly, and the Eleventh Circuit Court of Appeals has stated that "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." Brungart v. Bellsouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000) (quoting Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999).  However, to meet even this low threshold of proof of causation, the plaintiff must offer some evidence from which a jury reasonably could infer that the filing of the EEOC charge caused the adverse

8

employment action.  It is this third element of the *prima facie* case on which Anderson fails to meet his burden.

In the absence of direct evidence, "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Id. While Anderson has presented evidence that could be viewed as evidence of *discrimination*, that evidence relates to events that occurred well before the alleged retaliation set forth in Anderson's complaint.[4]  Lacking direct evidence of retaliation, Anderson must present circumstantial evidence to show a causal link between his filing of an EEOC charge and AAA Cooper's failure to rehire him.  For purposes of establishing a causal link between the protected conduct and the adverse action, and thus establishing a *prima facie* case of retaliation, Anderson merely had to show a sufficient temporal proximity between the two.

The only dates relevant to resolving the issue of whether there is a sufficient temporal proximity to establish a causal link between the protected conduct and the adverse action are November 1, 2002, the date Anderson filed his discrimination charge with the EEOC, and June 16, 2003, the date that Kenneth Durrett, one of the 21 employees laid off by AAA Cooper, was rehired. Because the rehiring that occurred *before* the filing of the EEOC charge cannot be evidence that

---

[4]    In his Brief in Response to Defendant's Motion for Summary Judgment, Anderson states that when he returned to work in August 2000 after his auto accident "he was told by Jim Kirk and Dan Langley (Anderson's supervisors) that he would never be able to do the work at AAA Cooper again."  However, since this statement allegedly was made more than two years prior to Anderson's filing of an EEOC charge, it has no bearing on the claim of retaliation asserted in his complaint.

AAA Cooper had a retaliatory animus toward plaintiff, the only instance of potential retaliation was the decision to rehire Durrett rather than plaintiff.  Until that occurred, there simply was indication that plaintiff was being subjected to retaliation any more than Durrett, the other employee laid off with plaintiff who, to that point, had not been rehired.  Thus, the relative amount of time for this court to consider in determining temporal proximity as it relates to causation is seven months and two weeks.

A review of cases from the Eleventh Circuit Court of Appeals indicates that the passage of this much time, seven months and two weeks, between the protected activity and the adverse employment action is too great to establish a causal connection.  In Maniccia v. Brown, the Eleventh Circuit Court of Appeals stated that  "[t]he more than 15 month-period that elapsed between the Appellant's grievance and the alleged adverse employment actions belies her assertion that the former caused the latter." Maniccia v. Brown, 171 F.3d 1364, 1370 (11th  Cir. 1999) (citing O'Connor v. Chicago Transit Auth., 985 F.2d 1362, 1370 (7th Cir. 1993) (nine-month gap between protected activity and adverse employment action precluded reasonable inference of causation); Conner v. Schnuck Markets, Inc., 121 F.3d 1390 (10th Cir. 1997) (four-month lag between protected activity and termination not sufficient to justify inference of causation)).  In Wascura v. City of South Miami, the Eleventh Circuit Court of Appeals held that the three-and-one-half month period between plaintiff's protected activity and the adverse employment action was insufficient to show causation. Wascura v. City of South Miami, 257 F.3d 1238, 1245 (11th Cir. 2001) (citing Conner v. Schnuck Markets, Inc., 121 F.3d 1390 (10th  Cir. 1997); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th

Cir. 1997) (affirming district court's holding that three-month period of time between plaintiff's protected activity and termination was, standing alone, insufficient to establish a causal connection).

The seven-month-and-two-week period between Anderson's protected activity and the adverse employment action is far greater than the time the Eleventh Circuit Court of Appeals has viewed as sufficiently close to establish a causal connection.  See Farley v. Nationwide Mut. Ins. Co, 197 F.3d 1322, 1337 (11th Cir. 1999) (holding that plaintiff's termination seven weeks after filing EEOC discrimination charge established a causal connection); Berman v. Orkin Exterminating Co., Inc., 160 F.3d 697, 702 (11th Cir. 1998) (holding that adverse employment action taken between five weeks and "a couple of months" of plaintiff's filing of an EEOC complaint was sufficient to establish a causal connection); Donnellon v. Freuhauf Corp., 794 F.2d 598, 601 (11th Cir. 1986) (holding that one-month period between filing of discrimination complaint and adverse employment action was sufficient to show a causal connection).  Finally, the court in Higdon v. Jackson recently defined further what constitutes sufficient temporal proximity to establish a causal connection in a retaliation case.

> We have held that a period as much as one month between the protected expression and the adverse action is not too protracted. See Wideman, 141 F.3d at 1457 (citing Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986)).  The Supreme Court has stated that "mere temporal proximity between ... knowledge of protected activity and an adverse ... action ... must be 'very close.' " Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) (citations omitted).  The Court cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection. See id. (citing Richmond v. ONEOK, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient) and Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient)).  If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law.  In Wascura v. City of

11

> South Miami, we held that "Wascura failed to present evidence from which a reasonable jury could find any causal connection between Wascura's notice to the Commissioners in January 1995 of her potential need to take time off to care for her son and her subsequent termination on May 16, 1995." 257 F.3d 1238, 1248 (11th Cir. 2001).

Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).

Based on the undisputed facts of this case and the parameters established by the Eleventh Circuit Court of Appeals regarding temporal proximity, this court finds that the temporal proximity between Anderson's protected conduct of filing an EEOC charge of discrimination and the adverse employment action he experienced is far too great to establish a casual connection between the two. A reasonable jury could not infer solely on the basis of the seven-and-a half month gap between the filing of the charge and the rehiring of Durrett over plaintiff that the decision to rehire Durrett rather than plaintiff was retaliatory.

Plaintiff argues that the comments made by his supervisors in 2000, who then predicted he would never be able to perform the physical work required by the job, is evidence of a retaliatory motive. That allegation is remote in time from the failure to rehire in 2003, and made long before the EEOC charge was filed. Furthermore, it appears unrelated to any retaliatory motive because plaintiff did perform the physical work of the job after that comment was made. Moreover, the comment simply is not evidence of retaliation. Plaintiff's evidence shows that when the two supervisors made the comment, plaintiff was unable to walk without a walker and was severely injured. Plaintiff does not allege that the comment was made with any ill will, but acknowledged that it was nothing more than an observation of plaintiff's then-existing physical condition, which plaintiff does not dispute was extremely fragile. Accordingly, plaintiff has failed to offer any

evidence that the defendant's failure to rehire him was related in any way to his EEOC charge. Without the element of causation, plaintiff has failed to present a *prima facie* case of retaliation, and defendant's motion for summary judgment is due to be granted.[5]

## IV. CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented and Eleventh Circuit Court of Appeals case law, and in light of Anderson's failure to establish a *prima facie* case of discrimination, this court determines that AAA Cooper's motion for summary judgment against Anderson (court document #15) is due to be GRANTED and Anderson's claims are due to be DISMISSED WITH PREJUDICE. A separate order will be entered in accordance with the findings set forth herein.

DATED the 6th day of July, 2005.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE

---

[5] Anderson argues that AAA Cooper has "shifted" its explanation for why it failed to rehire him. Plaintiff argues that the articulated reason is merely a pretext for retaliation. While plaintiff correctly notes that "shifting reasons" for an adverse employment action can be deemed evidence that the reasons given are pretextual, see, *e.g.*, Cleveland v. Home Shopping Network, 369 F.3d 1189 (11th Cir. 2004), the issue of pretext arises only *after* a plaintiff has met his *prima facie* showing. Because plaintiff fails to demonstrate the essential element of causation between the adverse action and the protected activity, the court need not evaluate the defendant's articulated non-discriminatory reason.